UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KE ZHAO,<br><br>     Plaintiff,<br><br> -against-<br><br>THE BANK OF NEW YORK MELLON CORPORATION,<br><br>     Defendant. | **COMPLAINT**<br><br>**Docket No.:**<br><br>Jury Trial Demanded |

KE ZHAO ("Plaintiff"), by and through his attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for his Complaint against THE BANK OF NEW YORK MELLON CORPORATION ("Defendant"), alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. This is a civil action based upon Defendant's violations of Plaintiff's rights guaranteed to him by: (i) the anti-age discrimination provisions of the Age Discrimination in Employment Act of 1967, as amended ("ADEA"); (ii) the anti-disability discrimination provisions of Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"); and (iii) any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiff was fifty-eight years old when the discrimination detailed herein occurred. He also suffers from right-leg atrophy due to contracting polio during early childhood. Plaintiff worked for Defendant, a Delaware corporation that provides financial services and related banking services throughout the United States, at Defendant's headquarters in Manhattan, from August

2001 until his termination on June 26, 2023, most recently as a Vice President on the Markets Quantitative team.

3.      Plaintiff brings this action to seek redress for Defendant's termination of his employment on the basis of his age and/or disability, in violation of the ADEA and the ADA.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 623 and 42 U.S.C. § 12101 *et seq*.

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district in that Plaintiff worked for Defendant in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      On July 11, 2023, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant, EEOC Charge No. 520-2023-05757, alleging age and disability discrimination based on the events alleged herein.

7.      On May 7, 2026, the EEOC issued a "Determination and Notice of Rights" letter, notifying Plaintiff of his right to sue, which Plaintiff received on May 14, 2026.  Plaintiff commences this action within ninety days of receipt of that notice from the EEOC.

## PARTIES

8.      At all relevant times herein, Plaintiff worked for Defendant in New York and was a "person" and an "employee" entitled to protection as defined by the ADEA and the ADA.

9.      At all relevant times herein, Defendant was and is a Delaware corporation with its principal place of business located at 240 Greenwich Street, New York, New York 10286.  At all relevant times herein, Defendant was and is an employer within the meaning of the ADEA and the ADA, as it employes twenty or more, and thus fifteen or more employees.

## BACKGROUND FACTS

10.     Plaintiff worked for Defendant from August 2001 to June 26, 2023, at all times assigned to work at Defendant's Manhattan headquarters.  He also, as explained below, at times worked remotely from his home in New Jersey.

11.     Plaintiff began his employment with Defendant as a Senior Quantitative Analyst at the age of thirty-six.

12.     Plaintiff, who contracted polio as a young child, has atrophy in his right leg that substantially limits many of his major life activities, specifically causing him to walk with a cane, as well as limiting his ability to stand for prolonged periods, navigate stairs, and traverse uneven surfaces, all of which made commuting from New Jersey to Manhattan and back again painful and difficult for Plaintiff.  Thus, Plaintiff disclosed his condition to Maryann Watt, Defendant's Head of Market Risk Modeling and Management, in or around late-2002, which led to Plaintiff and Defendant entering into a written agreement at that time providing that Plaintiff would be permitted to work from home two days per week.

13.     In or around May 2017, Plaintiff was transferred to the Markets team where he assumed the role of Vice President.   In this role, Plaintiff's work from home accommodation arrangements were changed pursuant to a verbal agreement with Dongsheng Lu, Head Senior Group Manager of Data Management & Quantitative Analysis, allowing Plaintiff to work from home one day per week.  This lasted until the onset of the COVID-19 pandemic, at which time Plaintiff transitioned to working remotely on a full-time basis.

14.     In or around early-2022, Defendant notified Plaintiff that it would be requiring employees to return to in-person work.  Plaintiff, who was fifty-seven years old at that time and had not formally revisited his accommodation arrangements in approximately twenty years, requested permission from his direct supervisor, Malik Dussaud, Head of First Line Exposure

Optimization and Quants, to allow Plaintiff to work from home four days per week once the return to in-person work was effectuated.

15.    Dussaud denied Plaintiff's request because it would be "too much trouble" for Defendant, despite the fact that Plaintiff had been successfully performing all functions of the position while working exclusively remotely for an extended period during the COVID-19 pandemic.

16.    Shortly thereafter, in or around February 2022, several employees resigned from their positions with Defendant.  This resulted in Plaintiff assuming new job duties and responsibilities, which he readily accepted.

17.    Plaintiff excelled with this expanded responsibility, and on or around April 18, 2022, Defendant provided Plaintiff with a retention bonus.  Around that same time, Plaintiff again requested from Dussaud that Defendant permit him to work remotely four days per week due to his disability, revisiting the proposition of updating his accommodation.  Dussaud agreed and stated that no formal accommodation paperwork was necessary.

18.    In or around spring or summer of 2022, Plaintiff and Dussaud had a conversation regarding the possibility of a promotion for Plaintiff.  In that conversation, Dussuad advised Plaintiff that he was not eligible for the prospective promotion as the candidates had already been determined earlier that year.

19.    In October 2022, Defendant decided to make changes to the Markets team, including an expansion into London and the addition of two substantially younger individuals to the New York Markets team: Xilun Zhu, a new employee; and Yue Huang, a new contractor who was subsequently converted to a full-time employee.  Both Zhu and Huang were in their early thirties at the time their respective employment with Defendant began.

4

20.    The changes to the Markets team also involved changes to the functional responsibilities of the employees on the team, including Plaintiff.  Nevertheless, Plaintiff's 2022 year-end review with Gordon Lee, the recently hired Global Head of Markets, was positive.

21.    In 2023, Plaintiff took initiative to find roles within the new structure of the Markets team in addition to his primary job responsibilities by advancing a new pricing engine, and after learning that Defendant was expanding into Securities Lending and Financing matters and hiring for related positions, proactively offering his services to assist with those matters based on his relevant experience in the area.

22.    Despite Plaintiff's qualifications and willingness to contribute to an area where Defendant was expanding, Defendant did not provide Plaintiff with such an opportunity.

23.    Thereafter, on June 13, 2023, when Plaintiff was fifty-eight years old at the time, Defendant terminated Plaintiff's employment, effective June 26, 2023, along with the employment of another individual over the age of forty.  Defendant hired younger, non-disabled individuals to replace Plaintiff, none of whom required a disability-related work from home accommodation.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANT**
*Age Discrimination in Violation of the ADEA*

24.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

25.    The ADEA prohibits employers from discriminating against employees over the age of forty on the basis of age in the terms, conditions, or privileges of employment.

26.    As described above, Defendant is an employer within the meaning of the ADEA, while Plaintiff was an employee within the meaning of the ADEA.

27.    As also described above, Defendant discriminated against Plaintiff on the basis of his age, in violation of the ADEA, by terminating his employment.

28.     As a direct and proximate result of Defendant's unlawful conduct in violation of the ADEA, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

29.     Defendant's unlawful discriminatory actions constitute willful violations of the ADEA, for which Plaintiff is entitled to an award of liquidated damages.

30.     Plaintiff is also entitled to attorneys' fees for Defendant's violations of the ADEA.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANT**
*Disability Discrimination in Violation of the ADA*

31.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

32.     Title I of the ADA prohibits employers from discriminating against their employees on the basis of their disability in the terms, conditions, or privileges of employment.

33.     As described above, Defendant is an employer within the meaning of the ADA, while Plaintiff was an employee who suffers from a "disability" within the meaning of the ADA.

34.     As also described above, Defendant discriminated against Plaintiff on the basis of his disability, in violation of the ADA, by terminating his employment.

35.     As a direct and proximate result of Defendant's unlawful conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

36.     As a direct and proximate result of Defendant's unlawful conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

6

37.     Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

38.     Plaintiff is also entitled to attorneys' fees for Defendant's violations of the ADA.

## DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A.     A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States laws;

B.     Granting an award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with his claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that he would have received but for Defendant's unlawful conduct;

C.     Granting an award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with his claims;

D.     Awarding liquidated damages under the ADEA;

E.     Granting an award of damages to be determined at trial to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment in connection with his claims;

F.     Granting an award of punitive damages, to the extent permitted by law, commensurate with Defendant's ability to pay;

G.     Granting an award of reasonable attorneys' fees, as well as all costs and expenses incurred in connection with this action, including expert witness fees and other costs;

H.      Granting an award of pre-judgment and post-judgment interest, as provided by law;

and

I.      Granting such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
August 7, 2026

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
910 Franklin Avenue, Suite 205
Garden City, New York 11530
Tel. (516) 248-5550
Fax. (516) 248-6027

By:  _____
NOAH M. PAGE (6130298)
MICHAEL J. BORRELLI (MB 8533)